UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| | ) | No. 21 CR 618 |
| v. | ) | |
| | ) | Honorable Martha M. Pacold |
| CHARLES LIGGINS | ) | |
| Defendant. | ) | |

DEFENDANTS CHARLES LIGGINS' AND CHRISTOPHER THOMAS'
MOTION FOR ATTORNEY CONDUCTED AND INDIVIDUALIZED *VOIR DIRE*

Now comes Defendant CHARLES LIGGINS and CHRISTOPHER THOMAS, by their respective counsel, and hereby moves this Honorable Court, pursuant to the Impartial Jury, Due Process, and Effective Assistance of Counsel Clauses of the Fifth and Sixth Amendments to the United States Constitution (1) to allow the attorneys for the parties to directly question the potential jurors and (2) to allow questioning on sensitive matters and pretrial publicity to be conducted individually and not in a group setting.

THE DEFENDANTS ARE ENTITLED TO A TRIAL BY IMPARTIAL JURORS

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." In addition, the right to trial by a fair panel of impartial jurors has been recognized as a basic requirement Due Process. *See, e.g., Irvin v. Dowd,* 366 U.S. 717, 722 (1961): *United States v. Walker,* 160 F.3d 1078, 1083 (6th Cir. 1998).

1

The *voir dire* procedure used in questioning potential jurors is the only method by which the Defendants can obtain the information necessary to select an impartial jury. However, in order to be truly effective, *voir dire* questioning must go beyond merely eliciting basic demographic information. It must reveal the experiences, thoughts, and feelings of each individual juror as to the many sensitive issues that will arise in this case. This information is critical in order for the the Court and the parties to identify jurors who should be stricken for cause because of bias, prejudice or other disqualifying factors. This information is also critical in order for the Defendants and defense counsel, as well as the government, to knowledgeably and thoughtfully exercise their peremptory challenges.

In order to assure that the Defendant's and defense counsel obtain truthful, candid and complete information from the potential jurors on the sensitive matters integral to this case, attorney conducted and individualized questioning should be part of the jury selection process.

THE ALLEGATIONS IN THIS CASE INVOLVE SENSITIVE ISSUES THAT MAY ADVERSELY AFFECT A JURORS ABILITY TO BE FAIR AND IMPARTIAL IN REACHING THEIR VERDICTS

This case presents a particular challenge to obtaining truthful, candid, and complete information from potential jurors about their experiences, thoughts and emotional reactions.

The charges in this case are premised on the August 4, 2020, murder of Carlton Weekly, described in the media as a "Chicago rapper," and the injury suffered by two other persons during that shooting. Any murder is, of course, a potentially sensitive and emotional matter. But in this case, according to the Government, Weekly was standing

in line to get into a store when four individuals fired 38 times in 12 seconds, hitting Weekly 16 times and each of the other victims several times. This violent scenario and the resulting physical injuries will undoubtedly disturb many potential jurors. As may the fact that this murder occurred on Oak Street--a street lined with high end clothing stores located in the "Gold Coast" of Chicago–an area that rarely if ever sees such violence.

Compounding the emotional landscape, the Government claims that this murder/shootout was the work of members of a street gang that constitutes a RICO enterprise and that allegedly engaged in multiple violent criminal acts, including murder and assault, as well as drug dealing. Moreover, the Government's theory is that this murder/shootout was part of an ongoing rivalry between two street gangs and was fueled by violent "rap" or "drill music." In fact, we anticipate that the Government will attempt to introduce a number of videos containing such music as part of their case.

Thus, this case at a minimum involves deadly violence, firearms, drugs, street gangs, and violent rap music–all hot button issues that are at the forefront of daily news coverage, political controversy, and social disagreement. Potential jurors are sure to have personal experiences, thoughts and strong feelings about these issues that must be thoroughly explored in order to determine if they can be fair and impartial jurors in this difficult case.

POTENTIALLY PREJUDICIAL PRESS COVERAGE MAY HAVE IMPROPERLY INFLUENCED POTENTIAL JURORS

There has been significant pretrial publicity about this case. We anticipate that such publicity will be repeated and intensified as the trial date approaches.

Multiple detailed articles about this case have already been carried in the mainstream media, most illustrated with photographs to grab attention. These articles contain allegations and purported information that are likely outside the evidence that will actually be admissible at trial. Moreover, the inflammatory slant of these articles is obvious from titles like "FBD Duck's Gold Coast killing followed years long gang war involving girl gang assassin, other rappers, feds say." Chicago Sun Times August 7, 2023.

The Defendants cannot hope to obtain a fair and impartial jury unless they are able to thoroughly examine each potential juror as to their exposure to this highly prejudicial material.

ATTORNEY CONDUCTED *VOIR DIRE* RESULTS IN POTENTIAL JURORS PROVIDING MORE COMPLETE AND CANDID INFORMATION REGARDING SENSITIVE SUBJECTS

Federal Rule of Criminal Procedure 24(a)(1) authorizes the Court to allow attorney conducted voir dire: "In General: the court may examine prospective jurors or may permit the attorneys for the parties to do so." Thus this Court has total discretion to grant our request for attorney conducted voir dire.

In this case, we are suggesting that the Court perform initial questioning and then allow the attorneys to directly question the potential jurors. This procedure is consistent with The American Bar Association *Standards for Criminal Justice*, Standard 15-2.4 Conduct of Voir Dire Examination Section (b) which states:

> Following initial questioning by the court, counsel for each side should have the opportunity, under the supervision of the court and subject to reasonable time limits, to question jurors directly, both individually and as a panel.

4

There are a number of potential benefits to attorney conducted voir dire.

First, research has shown that attorneys may actually be more effective than judges in eliciting candid self-disclosure from potential jurors. *See, e.g.,* Susan E. Jones, *Judge Versus Attorney Conducted Voir Dire: An empirical investigation of juror candor.* 11 Law & Hum. Behav. 131, 143 (1987). The judge is an authority figure. Consequently, potential jurors are likely to give the responses they believe will satisfy the judge. Attorneys have a more co-equal status with potential jurors. So potential jurors are more likely to be more honest in answering attorney's questions.

Second, attorneys have more detailed knowledge of the facts of the particular case, which enables them to better probe potential jurors biases and other factors relevant to the case. *See, e.g., United States v. Ledee,* 549 F. 2d 990, 993 (5th Cir. 1977) ("[W]e must acknowledge that voir dire examination in both civil and criminal cases has little meaning if it is not conducted by counsel for the parties. 'A judge cannot have the same grasp of the facts, the complexities and nuances as the trial attorneys entrusted with the preparation of the case. The court does not know the strength and weaknesses of each litigant's case. Justice requires that each lawyer be given an opportunity to ferret out possible bias and prejudice of which the juror himself may be unaware until certain facts are revealed.'" *Citing* Frates & Greer, *Jury Voir Dire: The Lawyer's Perspective,* 2 ABA Litigation No. 2 (1976)); Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions,* 4 Harv. L. & Pol'y Rev. 149, 160 (2010)("Because lawyers almost always know the case better than the trial judge,

5

lawyers are in the best position to determine how explicit and implicit biases among potential jurors might affect the outcome.")

INDIVIDUALIZED JUROR QUESTIONING ON SENSITIVE MATTERS AND PRETRIAL PUBLICITY IS NECESSARY TO OBTAIN HONEST ANSWERS WHILE AVOIDING CONTAMINATION OF THE ENTIRE JURY POOL

When potential jurors are questioned about sensitive matters such as street gangs or violent lyrics in rap music, they may be more reluctant to speak openly in front of other jurors. This is particularly true when a potential juror has feelings or prejudices they believe are socially or politically unacceptable. Thus, if questioned in a group, they may give an untrue but socially acceptable answer rather than honestly admit to a prejudice.

Similarly, potential jurors may have personal experiences that could create an improper bias, but they do not want to expose that private information to the larger group venire. So they remain silent.

The result is that a prejudiced or biased person may end up being selected as a juror because that person was questioned in a group. Conversely, if truthful answers regarding such prejudices, experiences and biases are provided in a group setting, they create a danger of contaminating the entire jury pool.

The existence of extensive pretrial publicity has often been recognized as a factor requiring thorough examination of prospective jurors. *See, e.g., United States v. Dellinger,* 472 F.2d 340, 372-378 (7th Cir. 1972). As with questions regarding sensitive topics, where potential jurors are questioned about exposure to pretrial publicity, they should be questioned individually to assure candor and to protect the rest of the jury pool from exposure to that publicity. *See, e.g., Coppedge v. United States,* 272 F. 2d

6

504, 505-509 (D.C. Cir. 1959). ("It is too much to expect of human nature that a juror would volunteer, in open court, before his fellow jurors, that he would be influenced in his verdict by a newspaper story of the trial.")

Thus, the better and safer approach is to question jurors about sensitive matters and pretrial publicity in an individualized setting. As Standard 15-2.4 of the ABA *Standards for Criminal Justice* advises:

> (d) Where there is reason to believe the prospective jurors have been previously exposed to information about the case, or for other reasons are likely to have preconceptions concerning it, counsel should be given liberal opportunity to question jurors individually about the existence and extent of their knowledge and preconceptions.
>
> (e) Jurors should be examined outside the presence of other jurors on sensitive matters or prior exposure to potentially prejudicial material.
>
> (1) Sensitive matters are those matters which might be potentially embarrassing or intrusive into the jurors's private life, feeling or beliefs, or those matters which if discussed in the presence of the jury panel, might prejudice or influence the panel by exposing other potential jurors to improper information.

OTHER COURTS HAVE SUCCESSFULLY INCORPORATED ATTORNEY
CONDUCTED VOIR DIRE AND INDIVIDUALIZED QUESTIONING IN
THEIR JURY SELECTION PROCEDURES

Attorney conducted *voir dire* is a routine procedure in many Cook County courtrooms. Although historically less prevalent in federal court, that is changing.

For example, in this very courthouse Judge John Robert Blakey allows attorney conducted questioning of potential jurors in both criminal and civil jury trials. Attached hereto is (1) Judge Blakey's Jury Selection Protocol for Criminal Cases and (2) Cover Letter and Questionnaire that potential jurors fill out before jury selection begins. Both of these materials are from Judge Blakey's website.

7

Defense Counsel Giacchetti recently tried *United States v. Blackman, et al.* 18 CR 728 in front of Judge Blakey. This was a lengthy multi-defendant RICO/VICAR trial involving multiple murders alleged to have been committed by members of a Chicago street gang. This case involved many similar sensitive issues to the instant case: violence, firearms, street gangs, and violent videos.

After discussion with the parties, Judge Blakey modified his website jury selection process somewhat in that more of the questioning was done by the parties with jurors individually rather than in the group. Moreover, Judge Blakey did not impose the 15 minute time limits specified in his procedures as those time limits were not abused by any of the parties. We would note that there were few if any issues relating to the appropriateness of the questions posed to the potential jurors by either side and the jury selection went smoothly.

This Court, of course, will ultimately determine its own jury selection procedure in this case. However, given the recent successful use of attorney conducted and individualized *voir dire* in a very similar case in the same courthouse, we respectfully request that this Court allow attorney conducted and individualized questioning of potential jurors in this case.

8

CONCLUSION

Wherefore, for the foregoing reasons, Defendants Charles Liggins and Christopher Thomas respectfully move this Court to grant this motion and incorporate attorney conducted and individualized questioning of potential jurors into the Court's jury selection procedure[1].

Respectfully submitted,
*/s/Cynthia Giacchetti*

/s/Gregory Mitchell
Attorneys for Defendant Charles Liggins

*/s/Ellen R. Domph*

*/s/Keith Spielfogel*
Attorneys for Defendant Christopher Thomas

CYNTHIA GIACCHETTI
53 W. Jackson Blvd-Suite 1035
Chicago, Illinois 60604
312-939-6440

GREGORY T. MITCHELL
19150 Kedzie Avenue-Suite 205
Homewood, Illinois 60430
709-799-9325

Ellen R. Domph
53 W. Jackson Blvd., Suite 1523
Chicago, IL 60604
(312) 922-2525

Keith Spielfogel
190 S. LaSalle St., Suite 540
Chicago, IL 60603
(312) 236-6021

---

[1] Defendants Liggins and Thomas are simultaneously filing Proposed Voir Dire Questions to be asked by the Court in the event this motion for attorney conducted individualized questioning is denied.