UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 618 |
| v. | |
| CHARLES LIGGINS, et. al. | Honorable Martha M. Pacold |

## GOVERNMENT'S CONSOLIDATED REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE*

The United States of America, through its attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, respectfully files this consolidated reply in support of its motions *in limine* (Dkt. No. 238).[1]

Defendants Kenneth Roberson (Dkt. No. 268), Christopher Thomas and Charles Liggins (Dkt. No. 269), and Tacarlos Offerd (Dkt. No. 272) filed responses to the government's motions *in limine*. Defendant Marcus Smart has moved to adopt Defendant Roberson's responses. Dkt. No. 275. Many of the Defendants' arguments overlap but, to the extent they do not, the government notes any differences below. For purposes of efficiency and ease of reference, the government files its consolidated replies in a single document.[2] For the reasons that follow, the government respectfully requests that this Court grant its motions *in limine*.

---

[1] For purposes of efficiency and ease of reference, the government files its replies in support of its motions *in limine* in a single document. No single reply exceeds the 15-page limit imposed by the Local Rules.

[2] The government also respectfully refers the Court to its initial brief (Dkt. No. 238) for more fulsome recitations of the facts and law applicable to each of its motions *in limine*.

## I.        Admit the Camtasia Compilation Video as a Summary Exhibit

*Objections:* Defendants Thomas, Liggins, and Roberson oppose this motion *in limine.* Dkt. No. 269 at 1 (Thomas and Liggins); Dkt. No. 268 at 3 (Roberson).[3] Defendants object to the written descriptions and arrows in the original Camtasia summary exhibit, which they argue are impermissible argument or "inference." *See* Dkt. No. 269 at 3; Dkt. No. 268 at 4.

*Government's Reply:* The government intends to move to admit a revised Camtasia video summary exhibit that includes labels only for the camera source of the video or still image. This revised version also removes arrows from the Camtasia summary exhibit to address defendants' concerns.[4]  The government will submit a copy of the revised Camtasia summary exhibit that it plans to move to admit at trial as Exhibit 1.[5] This is an admissible summary exhibit under Rule 1006.

A summary exhibit is admissible under Rule 1006 if the underlying, voluminous records are themselves admissible and the summary exhibit accurately summarize those records and does not misrepresent their contents or "make argument or inference." *United States v. White,* 737 F.3d 1121, 1135 (7th Cir. 2013); *see also United States v. Shorter,* 874 F.3d 969, 978 (7th Cir. 2017) (A proponent of a summary exhibit "need only make a showing that 'the underlying records are accurate and would be admissible as evidence.'"). Because the government's revised

---

[3] Notably, defendant Roberson does not appear to object to the inclusion of labels indicating the location of the camera view being shown. Dkt. No. 268 at 3 (no objection "where a location has been added.").

[4] The government maintains that the use of arrows is not impermissible for a Rule 1006 summary exhibit.

[5] The government anticipates that it can share a copy of Exhibit 1 next week.

Camtasia summary exhibit will include only the source location for the different video clips or images, it is admissible under Rule 1006. The source of a video clip or still image is objective, accurate information that summarizes the voluminous recordings for convenient examination in court. *See* Fed. R. Evid. 1006. The Camtasia summary exhibit is composed of over fifty different video clips or still images taken from over thirty different cameras. If the government were to separately admit, publish, and play the fifty different video clips and still images to the jury, the source location of each video clip would be information available to the jury with the admission of each separate exhibit. But that would greatly increase the length of trial and inconvenience the jury's review of this evidence.

Accordingly, the government respectfully requests the court grant its motion *in limine* to admit the revised Camtasia summary exhibit (Exhibit 1) as a summary exhibit pursuant to Federal Rule of Evidence 1006.

## II. Preclude Evidence or Argument Related to Penalties Faced by Defendants

*Objections*: Defendants Liggins, Thomas, and Offerd do not object to this motion *in limine*. Defendant Roberson agrees not to "affirmatively inform the jurors about the penalties that he or any of the other defendants face" but intends to "point out through cross-examination the favorable terms provided" to cooperating witnesses. Dkt. No. 268 at 4.

*Government's Reply*: The government does not take issue with defense counsel appropriately cross-examining the government's witnesses. But defense counsel may not draw parallels amongst any benefits provided to cooperators and the penalties

3

that Defendant Roberson or any other defendant faces. Any attempt to compare potential penalties faced by cooperating witnesses on one hand and the defendants on the other would be irrelevant and improper.

### III. Preclude Evidence or Argument Relating to Mental Defect, Insanity, or Public Authority

None of the defendants oppose this motion *in limine*. The government therefore requests that the Court grant this motion as unopposed.

### IV. Allow Limited Evidence of Defendants' Incarceration During the Charged Racketeering Conspiracy

*Objections*: Defendants Roberson and Liggins oppose this motion *in limine*. Dkt. Nos. 268 at 5; 269 at 4-5. Defendant Roberson's opposition only seeks to bar the government from informing the jury why he was incarcerated at the time of a recorded call, the charge for which he was detained, and the length of his incarceration.

Defendant Liggins contends that allowing limited evidence of his incarceration would be improper because the recorded call at issue was made on October 14, 2021, and was not made during the course or in furtherance of the conspiracy.[6] Defendant Liggins further asks that, should the Court be inclined to allow this limited evidence, that (1) the government be precluded from explicitly focusing on the fact of incarceration; (2) the government not elicit the reason underlying the incarceration; and (3) the Court issue a limiting instruction.

---

[6] Defendant Thomas asserts that any evidence of Defendant Liggins's recorded call should not be admissible against Defendant Thomas as a co-conspirator. As the government noted in its *Santiago* proffer, statements made in furtherance of the conspiracy are admissible against all co-conspirators. Dkt. No. 191 at 45.

4

*Government's Reply*: As to Defendant Roberson, the government does not intend to inquire into the circumstances of his incarceration at the time of his recorded call during the government's case-in-chief.  The government reserves the right to elicit testimony or evidence regarding the circumstances of Defendant Roberson's incarceration for impeachment purposes if appropriate.

With respect to Defendant Liggins, he is incorrect that he did not make the call in furtherance of the conspiracy.  Dkt. No. 269 at 4.  Statements are properly considered "in furtherance" of a conspiracy when individuals make them to control damage to an ongoing conspiracy, *see United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000), or to conceal a conspiracy where ongoing concealment is a purpose of the conspiracy. *See United States v. Gajo*, 290 F.3d 922, 928-29 (7th Cir. 2002); *see also* Dkt. No. 120 (Superseding Indictment) at 2 (purposes of enterprise included "[t]aking steps designed to prevent law enforcement's detection of the enterprise's criminal activities").  Here, among other things during this call, Defendant Liggins instructed the person to whom he was speaking to tell a member of O-Block that everybody needed to get new phones.  Such an instruction was made both to control damage to and conceal the conspiracy.  Defendant Liggins was arrested for the murder on October 13, 2021. Dkt. No. 13.  He was accordingly on high-alert that the conspiracy to murder Mr. Weekly was being investigated and that the conspirators needed to make every effort to cover it up.

Further, the government intends to use Defendant Liggins's recorded call for another purpose, as well – evidence of O-Block as an enterprise. *See United States v.*

5

*Cox*, 923 F.2d 519, 527 (7th Cir. 1991) (statements made to conduct or help to conduct the business of the scheme satisfy "in furtherance" requirement). As stated above, the call at issue includes a directive by Defendant Liggins that members of O-Block get new mobile phones. The defendant's mandate directed at an audience of O-Block members is relevant for establishing the continuing existence of and the defendant's involvement in the enterprise and his relationship with his co-conspirators, even while the defendant was incarcerated. *See United States v. Lashmett*, 965 F.2d 179, 184-85 (7th Cir. 1992).

The government does not oppose Defendant Liggins's requests that (1) the government not unduly "call attention to the incarceration"; (2) the government not elicit the reason underlying the incarceration; and (3) the Court issue a limiting instruction. As with Defendant Roberson, the government reserves the right to elicit testimony or evidence regarding the circumstances of Defendant Liggins's incarceration for impeachment purposes, if appropriate.

## V. Admit Statements of Defendants on Recorded Conversations and Bar Defendants from Admitting Non-Inculpatory Portions of Recorded Conversations

*Objections*: Defendant Roberson's opposition is limited to contending that a ruling on the government's motion to admit is premature. Defendant Liggins's opposition solely requests that the Court "require the government to first identify the specific statements that it seeks to introduce." Dkt. No. 269 at 7.

*Government's Reply*: It is not premature for the Court to rule that a defendant seeking to introduce his own statements at trial constitutes hearsay, absent an

exception. *See United States v. Sanjar*, 876 F.3d 725, 739 (5th Cir. 2017) (stating that a defendant's out-of-court statements, when offered by the defense, constitute hearsay). The defendants remain able to seek the introduction of "any other part" of a statement in the interest of fairness per the doctrine of completeness, but this doctrine cannot be used "to circumvent Rule 803's exclusion of hearsay testimony." *See United States v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012), *abrogated on other grounds by Burton v. City of Zion*, 901 F.3d 772, 778 (7th Cir. 2018). Further, the doctrine of completeness does not "require introduction of portions of a statement that are neither explanatory nor relevant to the admitted passages." *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (quotation and citation omitted). As stated in the government's consolidated motions *in limine*, should a defendant seek to admit non-inculpatory portions of recorded conversations, the government respectfully requests the Court require the defendants to "identify the specific statements that [they seek] to admit and explain specifically how—consistent with [the doctrine of completeness principles]—the statement is admissible[.]" *United States v. Schultz*, No. 14 CR 467-3, R. 109, at *4 (N.D. Ill. Dec. 12, 2016).

With respect to Defendant Liggins' opposition, the government has identified the specific statements it intends to use and is in the process of providing specific clips, as well as transcripts, of those statements. Accordingly, his objection will soon be moot.

## VI.    Admit Crime Scene Photographs and Video and Medical Examiner Photographs Depicting Victim

*Objections*: Defendants Thomas and Liggins object generally to the government's use of crime scene, autopsy, and victim images, asserting that the photographs and videos are substantially more prejudicial than probative because the defendants do not deny Weekly's death nor the cause of his death – gunshot wounds.  Dkt. No. 269 at 8-9.

*Government's Reply*: The government asks that this Court grant its motion over objection.  As stated in the government's motion to admit, evidence remains relevant whether a defendant disputes it or not, and the government is not limited to offering evidence and eliciting testimony related only to issues that the defendants dispute.  The government has the burden of proof, but it is also entitled to prove its case as it sees fit.  *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).  Testimony alone will not demonstrate the manner in which Weekly was murdered.  Use of a medical examiner diagram will not show the jury the malice behind the murder.  The defendants cannot use the veils of stipulation and lack of dispute to sanitize Weekly's murder, and this Court should not allow them to do so.

Further, the government does not intend to offer redundant or superfluous images here.  The government has identified a small set of photographs and videos of the crime scene and the victims it intends to introduce at trial.  As of this filing, the government has selected 21 of the 225 photographs taken by the medical examiner's office as potential trial exhibits.  The government currently intends to offer only 3 short clips of body worn camera footage that show Weekly's or the other victims'

condition immediately following the shooting. This selectiveness is not consistent with a desire to inflame the jury, as Defendants Thomas and Liggins argue. *See* Dkt. No. 269 at 9.

The government intends to offer this evidence to show "the identity of the victim, the manner of death," and to corroborate witness testimony. *See United States v. Infelise*, No. 90 CR 98, 1992 WL 45023, at *1 (N.D. Ill. Feb. 5, 1992). Visual evidence of the scene of the crime and its aftermath is directly relevant to the government's theory of the case. *See United States v. Corley*, 519 F.3d 716, 726-27 (7th Cir. 2008) (affirming district court's admission of pictures in a capital death penalty case that were "probative of the manner of death, the extent of the injuries, and the viciousness of the attack"). The government requests that the Court allow it to so present.

## VII.  Admit Records as Self-Authenticating Pursuant to Rules 803(6), 902(11), and 902(13)

*Objections*: Defendants Thomas and Liggins object to the government's motion in part, contending that the government's request that Meta records for Facebook and Instagram accounts are not self-authenticating. Dkt. No. 269 at 11-14. Defendants Thomas and Liggins focus on user-created content, such as chat logs, and assert that such materials do not automatically evidence authorship or otherwise satisfy foundational thresholds on their face. *Id.* Defendant Offerd joins this opposition. Dkt. No. 272 at 3. Defendant Roberson does not object to this motion, reserving the right to object on foundation or relevance grounds. Dkt. No. 268 at 6.

*Government's Reply*: With respect to the Facebook and Instagram records, the Certificates of Authenticity appended to the government's opening brief cover many categories of documents, including "basic subscriber information" and "IP address logs." *See, e.g.*, Dkt. No. 238 Ex. A at 5. The defendants do not appear to take umbrage with authentication of those materials, but rather focus their concerns on user-created materials, such as chat logs. *See* Dkt. No. 269 at 12. The government has not, and does not, contend that self-authentication of Meta records—which means concluding that the documents are what they purport to be—is the same as ruling on the authorship of a chat, picture, or post. The government understands that neither the applicable rules of evidence, nor a Meta custodian, would be able to verify the author of user-created content on its platforms (while such records could demonstrate a certain posting was made from a certain user account, the records could not show, for example, who was sitting behind the keyboard of a computer when the posting was made). But what a custodian, or a certificate of authenticity, if permitted, could do, is establish that a certain post or chat, for example, was associated with a certain account within its platform. That is the purpose for which the government seeks to introduce the social media records as self-authenticating. It is not a shortcut to laying the appropriate foundation to establish authorship or attribution of any specific content, which the government will still be required to do at trial.

In its motions *in limine*, in addition to Facebook and Instagram account records, the government moved to admit certain AT&T and medical examiner records as self-authenticating. Dkt. No. 238 at 16. The defendants have not opposed these

two categories of documents, and the government accordingly requests the Court grant its motion with respect to these items as unopposed.

## VIII. Admit Weekly's Statements as Dying Declarations and/or Excited Utterances, Statements of Then-Existing Physical Condition, and Statements for Medical Treatment

*Objections:* Defendants Thomas, Liggins, Roberson, and Offered oppose the government's motion *in limine* to admit Weekly's statements as exceptions to the rule against hearsay. Defendants Thomas, Liggins, and Roberson contend that Weekly's statements that he was shot "everywhere" and his requests for "help" are irrelevant evidence under Federal Rule of Evidence 401. Dkt. No. 269 at 15; Dkt. No. 268 at 6-7. They also argue that the video clips of the statements are unduly prejudicial under Federal Rule of Evidence 403. Defendant Offerd's argument is more limited. Dkt. No. 272 at 1-2. He specifically opposes admitting Weekly's statements of "help me," which he argues are not dying declarations under Federal Rule of Evidence 804(b)(2), and should be precluded under Federal Rule 403 as unfairly prejudicial. *Id.*

*Government's Reply:* Weekly's statements are admissible, relevant evidence that are not unduly prejudicial. Attached hereto as Exhibits 2 and 3 are copies of Weekly's statements in the government's proposed video clips. The government's motion *in limine* should be granted.

As an initial matter, Offerd's argument as to the admissibility of Weekly's statements "help me" is easily dismissed. Weekly's requests for help are not hearsay. *United States v. White,* 639 F.3d 331, 337 (7th Cir. 2011) ("a command is not an assertion of fact"). But, even assuming they were, it is a dying declaration directly

related to the cause of his death: injuries sustained from the shooting. Fed. R. Evid. 804(b)(2). And Offerd ignores the government's other bases to admit Weekly's statement, including as excited utterances and statements made for the purpose of medical treatment. *See* Dkt. No. 238 at 20-21 (citing Fed. R. Evid. 803(2), 803(4)).

Both Weekly's statement that he was shot "everywhere" and his pleas for help are relevant evidence under Rule 401. As Defendants Thomas and Liggins acknowledge, the issue in this case is whether the defendants are responsible for the shooting. Dkt. No. 269 at 15. As articulated in the government's motion *in limine*, the manner and method of Weekly's murder is highly probative to the identity and motivation of the shooters. Dkt. No. 238 at 21-22. The government anticipates that evidence at trial will show that the defendants were highly motivated to kill Weekly because he was a high-priority opposition gang member for O-Block—so motivated that multiple gunmen chased Weekly down and repeatedly fired at him. His statement that he was "shot everywhere" is probative evidence of the brazenness of this attack, the shooters' motivations, and, accordingly, the defendants' identities as the shooters. His pleas for help also show the gravity of his injuries moments after the shooting. This evidence is not cumulative. While there will be medical examiner testimony about the number of and location of Weekly's gunshot wounds, his statements describing his injuries are relevant and corroborate that testimony.

Second, the evidence is not unduly prejudicial to be excluded under Rule 403. "Evidence is not to be excluded simply because it might be graphic or disturbing and if evidence is probative of an issue relevant to an element of the offense, it must be

admitted in all but the most extreme cases." *United States v. Kapp*, 419 F.3d 666, 677 (7th Cir. 2005). Here, an element of the charged conspiracy to murder Weekly is the defendants' motivations for committing the crime, namely, to maintain or increase their position in O-Block. Dkt. No. 120 at 3. The Seventh Circuit has noted that evidence is unduly prejudicial only "if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *United States v. Loughry*, 660 F.3d 965, 971 (7th Cir. 20110). The government has marked a total of approximately 30 seconds of Weekly's statements that also, unavoidably, depict some of Weekly's injuries. *See* Exs. 2 and 3. This appropriately limited portion of footage will not unduly prejudice the defendants. Accordingly, Weekly's statements should be admitted.

## IX. Bar Discovery Requests or Comments Regarding Discovery in the Jury's Presence

*Objections*: Defendant Roberson objects to a "blanket ruling" barring mention of discovery issues, contending that should a witness refer to a document that the defendant does not have, the defendant should be permitted to examine the witness regarding the document. Dkt. No. 268 at 8.

*Government's Reply*: Defendant Roberson's argument does not address the point of the government's motion – to preclude a defendant from creating the impression that the government has suppressed information as a means of seeking an unfair advantage. *See, e.g.*, *United States v. Gray*, No. 2:07 CR 166, 2010 WL 1258169, at *3 (N.D. Ind. Mar. 26, 2010) (granting government's motion to preclude the defense from requesting or commenting on discovery in the presence of the jury).

The government is not attempting to impede the defendant from appropriate cross examination of witnesses. But witnesses are generally unfamiliar with what has or has not been disclosed in discovery, and whether defense counsel received some particular record to which the witness alludes is most likely outside of the witnesses' personal knowledge and inappropriate for cross examination. To the extent the defendant identifies a discovery issue at trial, the government respectfully requests that the Court mandate any such issues be raised at sidebar, outside the presence of the jury, to allow for the Court to rule on the issue before presentation of the same to the jury.

## X. Preclude Evidence and Argument About Investigative Steps Not Taken

*Objections*: Defendants Roberson, Thomas, Liggins, and Offerd oppose this motion on the basis that the motion is premature and dependent upon trial testimony. Dkt. Nos. 268 at 8, 269 at 17, 272 at 2.

*Government's Reply*: No defendant alleges that there has been an investigative misstep or an avenue that should have been, but was not, explored. The defendants' objections are speculative and should not preclude the Court from granting the government's motion *in limine* on this topic. Should an issue arise at trial, the defendants may always raise it at sidebar, outside the presence of the jury, for assessment by the Court.

But without a specific issue, the defendants should not be permitted to cross-examine the government's witnesses on investigative steps not taken. *See United States v. Zaccaria*, 240 F.3d 75, 81 (1st Cir. 2001) ("In the absence of a particularized

14

showing that the government was not turning square corners, the district court acted well within its discretion in refusing to let defense counsel embark on a fishing expedition.") This is because unfettered cross-examination on investigative steps not taken, without evidence of deceptiveness or inappropriate investigation conducted, would create the impression, without evidence, that the government has taken inappropriate steps or cut steps as a means of seeking an unfair advantage. Investigative steps not taken are immaterial to the government's satisfaction of its burden of proof. The government respectfully requests that this Court exclude inquiry into investigative steps not taken, unless a defendant demonstrates a particularized showing of its need, and not just a general claim that law enforcement could have done things differently.

## XI.   Exclude Non-Identification Hearsay Evidence

*Objections*: Defendant Roberson "agrees with the general proposition that those who do not make an identification of anyone and do not testify at trial cannot be asked about their lack of identification" but seeks to reserve his ability to cross-examine testifying witnesses about their identifications (or lack thereof) of the defendants. Dkt. No. 268 at 8.

*Government's Reply*: The government agrees that it is appropriate for Defendant Roberson to cross-examine testifying witnesses about their identifications or non-identifications, so long as the cross-examination is relevant and factually related to what the witnesses reviewed, saw, or did. What the defendants *cannot* do is seek to admit an out-of-court identification or non-identification without calling the

witness – the defendants may not attempt to elicit that type of testimony through anyone but the identifying (or non-identifying) witness.

## XII.  Bar Improper Use of Agents and Officers' Reports

*Objections*: Defendant Roberson does not oppose the government's motion, but seeks to reserve his ability "to use all reports for legitimate evidentiary purposes." Dkt. No. 268 at 9.   Defendants Thomas and Liggins argue that this motion is premature, contending that a conclusion that "interview reports prepared by law enforcement agents 'are not statements of the person being interviewed' under the Jencks Act" requires assessment on a report-by-report basis.  Dkt. No. 269 at 17. However, Defendants Thomas and Liggins agree to follow the rules of evidence regarding use of any reports and agree not to misrepresent the nature of any report or attempt to introduce any reports into evidence.  *Id.* at 19.

*Government's Reply*: It is not premature for the Court to rule that law enforcement reports summarizing witness interviews, which are drafted, edited, and finalized by law enforcement without the witness's review or ratification, do not constitute statements of the witnesses being interviewed and are not admissible as evidence or appropriate for use in impeachment of anyone but the report author. Seeking to impeach a testifying witness with a statement that he or she did not draft or review would be improper and should be excluded, absent a specific, supported showing by the defendants. *See Palermo v. United States*, 360 U.S. 343, 352 (1959) ("only those statements which could properly be called the witness' own words should be made available to the defense" for impeachment purposes).  Law enforcement

reports are not statements of the witnesses themselves (unless a witness reviewed and ratified a report, which was not the practice here) and, in fact, need not be produced under the Jencks Act. *See United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."). That being said, the government has produced the overwhelming majority of these reports and will continue to do so as appropriate.

Of course, the government does not contest the defendants' ability to ask a witness whether he or she made a statement reflected in a report. But the defendants may not contest a witness's testimonial response by publishing or introducing a report's contents as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) ("[FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005).

## XIII. Preclude Inquiry Into Officers/Agents' Non-Sustained Complaints

*Objections*: No defendant opposes the government's motion on this subject, but Defendants Thomas and Liggins reserve the right to inquire into any complaints regarding the law enforcement officers that the government tenders. Dkt. No. 269 at 19-20.

*Government's Reply*: The government is in the process of identifying which law enforcement officers it will call at trial and whether these testifying officers have

17

sustained complaints relating to honesty or bias in their files. To the extent they do, the government will disclose sustained complaints relating to honesty or bias consistent with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). The government will not disclose non-sustained complaints (e.g., not sustained, unfounded, no finding, exonerated, etc.) against law enforcement witnesses because they are irrelevant, and respectfully requests that inquiry into non-sustained complaints at trial be excluded.

## XIV. Admit Lay Opinion Testimony of Agents and Officers Related to the Identification of People and Places in Images, Videos, and Recorded Conversations

*Objections*: Defendants Roberson, Thomas, and Liggins oppose this motion, asserting that the testifying agents and officers lack the familiarity with the defendants required to permit lay opinion identification testimony under Rule 701.[7] Dkt. Nos. 268 at 9-11, 269 at 20.

*Government's Reply*: Investigating agents may identify defendants based on their investigations and familiarity with the defendants therefrom. *See United States v. Malagon*, 964 F.3d 657, 662 (7th Cir. 2020) (personal knowledge requirement derived from "officer's observations or other facts derived exclusively from a particular investigation"); *see also United States v. Tinsley*, 62 F.4d 376, 386 (7th Cir. 2023) (finding any error, if it existed, harmless, where district court permitted introduction of detective's identification of defendant "based on his investigation of

---

[7] The defendants rely on a Rule 701 argument similar to that posed by Defendants Liggins and Thomas in their motion to suppress identifications. *See* Dkt. Nos. 168-69, 171-74, and 179-80. The government responded to those motions and respectfully refers the Court to the Rule 701 section there. *See* Dkt. No. 247 at 25-30.

the robbery as lead detective"). At trial, the government will lay the foundation required to establish that the testifying agents have personal knowledge of what the defendants look like. This foundation will include, among other things, the length of time the agents have investigated the defendants, the approximate number of times they have reviewed images of the defendants, and how they are able to recognize them in images and footage. Similarly, the government will also lay a proper foundation that permits the agents to testify as to their identification of individuals in recorded conversations, due to their first-hand observations of and interactions with the defendants throughout their investigation.

## XV. Preclude Cross-Examination Regarding Arrests and Other "Bad Acts" of Witnesses

Defendants Roberson, Thomas, Liggins, and Offerd all agree to comply with the applicable Rules of Evidence but reserve the right to inquire into prior bad acts should they be permissibly approached under the rules. The government does not contest that the defendants are able to inquire into specific bad acts of a witness if those acts are probative of truthfulness. *See, e.g.*, *United States v. Van Dorn*, 925 F.2d 1331, 1336 (11th Cir. 1991); *United States v. McNull*, 887 F.2d 448, 453 (3d Cir. 1989). The government respectfully requests, and Defendants Thomas and Liggins do not contest (Dkt. No. 269 at 21), that this Court require any defendant seeking to cross-examine any witness related to prior bad acts to identify the bad act and the basis for its inquisition outside the presence of the jury, so that the government may be heard on the issue and the Court may rule before the propounding of any question on the topic.

## XVI. Preclude Forms of Argument of Evidence Designed to Elicit Jury Nullification

None of the defendants oppose this motion *in limine*, and the government requests that it be granted as unopposed. Defendants Thomas and Liggins request that the government also be precluded from making arguments designed to elicit jury nullification. Dkt. No. 269 at 22. The government will not make any such arguments.

## XVII. Preclude the "Missing Witness" Argument

The defendants do not oppose this motion, but they contend that any ruling on this topic is premature until the witnesses testify at trial. The government does not agree that precluding this type of argument is premature, because it is within the Court's discretion to prohibit argument concerning missing witnesses. *See United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987).

However, if the Court decides to withhold ruling on this motion at this juncture, the government requests that the Court require any defendant seeking to make a "missing witness" argument to raise that issue outside the presence of the jury, so that the government may be heard on the issue and the Court may rule. Further, should the Court permit the defense to offer a "missing witness" argument, the government requests that it be permitted to appropriately respond to the argument in the presence of the jury. *See, e.g.*, *Splendorio*, 830 F.2d at 1392 (the government may ordinarily respond to a "missing witness" argument by highlighting that an allegedly "missing witness" was equally available to the defense).

20

## XVIII.    Leave to File Additional Motions

None of the defendants oppose this motion *in limine*. The government therefore requests that the Court grant this motion as unopposed.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:    <u>/s/ *Sean Hennessy*</u>
JASON A. JULIEN
ANN MARIE E. URSINI
CAITLIN WALGAMUTH
SEAN HENNESSY
Assistant United States Attorneys
219 South Dearborn, Room 500
Chicago, Illinois 60604
(312) 353-5300

## <u>CERTIFICATE OF SERVICE</u>

I, Sean Hennessy, an attorney, certify that I served a copy of the foregoing Government's Consolidated Reply in Support of its Motions *in Limine* by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:    <u>/s/ *Sean Hennessy*        </u>
JASON A. JULIEN
ANN MARIE E. URSINI
CAITLIN WALGAMUTH
SEAN HENNESSY
Assistant United States Attorneys
219 S. Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 353-5300

22