UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES LIGGINS, et. al. | No. 21 CR 618<br><br>Honorable Martha M. Pacold |

**GOVERNMENT'S MOTION TO EXCLUDE
PROPOSED EXPERT LANCE WILLIAMS**

After 5:30 p.m. on Monday, October 9, 2023, a federal holiday and the evening before trial, defendant Roberson's counsel notified the government, for the first time, of Roberson's intent to call Lance Williams as an expert. Specifically, Roberson's counsel provided the government with a letter summarizing Williams' proposed testimony (Exhibit A) and Williams' resume (Exhibit B) (collectively, "the disclosure"). According to the disclosure, Williams would be called to testify regarding gang activity in Chicago, including the history and structure of the Gangster Disciples, the Black Disciples, and O-Block specifically. Further, the disclosure states Williams will testify that Roberson was an associate of Dipset, not an associate of O-Block, the charged enterprise here. Importantly, the disclosure fails to identify Williams' basis of knowledge for (1) O-Block's activities and membership, (2) Dipset's activities and membership, and (3) crucially, his ultimate opinion that Roberson was *not* an associate of O-Block. The disclosure further otherwise fails to meet the requirements of Federal Rule of Criminal Procedure 16 and Federal Rules of Evidence 702 and 403. The court should preclude Williams' testimony.

Additionally, if the Court has not ruled on the government's motion by the time the parties present opening statements, defendants should be precluded from referencing Williams' anticipated testimony during opening statements.

**I.  The Appropriate Remedy for Roberson's Untimely and Incomplete Disclosure is Exclusion Under Rule 16.**

Roberson's untimely, incomplete expert disclosure fails to comply with the requirements set out in Federal Rule of Criminal Procedure Rule 16 and should therefore be excluded.

"The court, by order or local rule, must set a time for the defendant to make the defendant's [expert] disclosures. The time must be sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. Rule 16(c)(iii).

Expert disclosures must contain: (a) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief"; (b) "the bases and reasons for them"; (c) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; and (d) "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Rule 16(b)(1)(C)(iii).

Further, "[t]he witness must approve and sign the disclosure, unless the defendant" either "states in the disclosure why the defendant could not obtain the witness's signature through reasonable efforts" or if the defendant has previously provided "a report, signed by the witness that contains all the opinions and the bases and reasons for them" as required. Rule 16(b)(1)(C)(v).

"If a party fails to comply with this rule [Rule 16], the court may," among other options, "prohibit that party from introducing the undisclosed evidence" or "enter any other order that is just under the circumstances." Rule 16(d)(2).

The appropriate remedy for untimely and incomplete expert disclosures is exclusion. *United States v. Buchbinder*, 796 F.2d 910 (7th Cir. 1986) (holding that district court's exclusion of expert testimony regarding defendant's mental state was appropriate, where defendant's failure to disclose complete expert materials until one week before trial deprived government of a meaningful opportunity to prepare to rebut expert testimony); *United States v. Khellil*, 678 F.Supp. 2d 713, 735-36 (N.D. Ill. 2009) (exclusion is an appropriate sanction for defense violation of Rule 16(b)(1)(c)), *citing United States v. Hoffecker*, 530 F.3d 137, 185 (3rd Cir. 2008) (defense experts properly precluded from testifying because of defendant's deficient and untimely notice) and *United States v. Day*, 524 F.3d 1361, 1371-72 (D.C.Cir. 2008) (defense expert properly precluded from testifying based on deficient and untimely notice resulting in prejudice to the government); *see also United States v. Causey*, 748 F.3d 310 (2013) (defense expert properly excluded where no expert disclosure was provided).

### a. Roberson's Disclosure is Untimely

The Court set a reasonable deadline of August 10, 2023, by which the defendants were ordered to disclose any experts to the government. (Dkt. 161). Defendant Thomas later moved for, and was granted, additional time to September 1, 2023, to disclose an expert. (Dkt. 208). Roberson neither provided an expert

3

disclosure by August 10 or September 1, nor did he ever seek additional time to provide an expert disclosure. The Court also set a deadline of October 5, 2023 for defendants to disclose their witness lists to the government. (Dkt. 323). Roberson did not disclose any proposed witnesses, expert or otherwise, by that date, either, nor did he move for an extension of that deadline. For this reason alone, the Court should bar Roberson's proposed expert from testifying.

The first time the government was informed of Roberson's intent to call Williams was October 9, 2023, the evening before trial started.[1] Roberson's disclosure was a full *two months* after the Court's deadline to disclose experts. Roberson never requested or received permission from the Court for a late disclosure.

As the Court is aware, trial is already underway. Jurors completed questionnaires and were addressed by the Court on October 10, 2023, and juror questioning began on Thursday, October 12, 2023. The lateness of Roberson's disclosure accordingly deprives the government of any meaningful opportunity to review, research, and respond to the disclosure before trial, because trial has already begun. *Hoffecker*, 530 F.3d at 185 (Rule 16(b)(1)(C) "is meant to prevent the defendant from obtaining an unfair advantage" and "to provide the opponent with a fair opportunity to test the merit of the expert's testimony"). Because of the late filing, the government could not, for example, request or prepare for a *Daubert*

---

[1] During a pretrial conference hearing, counsel for defendant alluded to an *ex parte* filing pending before the Court related to a witness they may call. The government was not privy to the filing and is not aware of the witness to whom that filing relates. The only disclosure Roberson has made to the government of any proposed witness is the eve of trial disclosure for Williams.

4

hearing or consider calling its own expert on the proffered subject. Further, because of the late disclosure, the Court must now consider the government's motion to exclude while the trial is ongoing.

Defendant's suggestion that the late disclosure is inconsequential because the expert would testify near the end of trial is unavailing. In 2022, Rule 16 was significantly amended. Per the Advisory Committee Notes, the 2022 amendment "addresses two shortcomings of the prior provisions on expert witness disclosure: the lack of adequate specificity regarding what information must be disclosed, and the lack of an enforceable deadline for disclosure. The amendment clarifies the scope and timing of the parties' obligations to disclose expert testimony they intend to present at trial. *It is intended to facilitate trial preparation,* allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." (emphasis added). The Committee Notes continue: "[t]o ensure enforceable deadlines that the prior provisions lacked […] the court, by order or local rule, must set a time for the government to make its disclosures of expert testimony to the defendant, and for the defense to make its disclosures of expert testimony to the government. These disclosure times, the amendment mandates, must be sufficiently before trial to provide a fair opportunity for each party to meet the other side's expert evidence. […] Deadlines should accommodate the time that may take, including the time an appointed attorney may need to secure funding to hire an expert witness, or the time the government would need to find a witness to rebut an expert disclosed by the defense." Rule 16 specifically contemplates pre-trial

5

disclosure of expert notices, and the Court provided a more-than-reasonable deadline that defendant ignored. The evening before trial is insufficient notice and unfair to the government and to this Court's administration of the trial.

### b. The Disclosure is Incomplete

Not only is the disclosure late, it also lacks the components required under Rule 16. The disclosure does not provide a "complete statement" of opinions to be elicited, the bases for these opinions, or even a signature affirming the witness has reviewed and agrees to the statements in the disclosure. The lack of detail, combined with the lateness of the disclosure, further deprives the government of the opportunity to meaningfully review and respond to the disclosure before trial and runs afoul of multiple requirements in Rule 16. As provided in Rule 16(d), the proposed testimony should be excluded for this reason, as well.

<u>Missing Signature With No Explanation</u>

First, the disclosure contains neither a signature of the witness nor an explanation for why the signature could not be obtained using reasonable efforts. Without a signature, it is unclear whether Williams even saw, let alone approved of, defendant's disclosure summarizing Williams' proposed testimony.

While Rule 16 recognizes the possibility that a party may not be able to obtain a witness's approval and signature despite reasonable efforts to do so, the Rule requires the party proposing the expert explain why they were unable to obtain the required signature. Per the Advisory Committee Notes to Rule 16, 2022 Amendments:

6

> [A] party may not be able to obtain a witness's approval and signature despite reasonable efforts to do so [when, for example] the party has not retained or specially employed the witness to present testimony, such as when a party calls a treating physician to testify. In that situation, *the party is responsible for providing the required information*, but may be unable to procure a witness's approval and signature following a request. An unsigned disclosure is acceptable so long as the party states why it was unable to procure the expert's signature following reasonable efforts.

(emphasis added).[2] The Rule, and the Advisory Committee Notes, are very clear that a signature is required absent some explanation. Without a signature, the disclosure is incomplete and the witness should be precluded from testifying.

### Incomplete Statement of Opinions

Second, the disclosure does not provide "a complete statement of all opinions" that will be elicited by the expert. The disclosure provides a summary of topics and does not clearly identify what opinions on those topics the expert would provide. Further, the disclosure admits it is incomplete and suggests the expert's testimony is dependent on trial testimony (without explaining how the trial evidence will expand, narrow, or change the testimony to be elicited).[3] The disclosure indicates that supplemental disclosures will be provided as the trial progresses. This on-the-fly

---

[2] Notably, a party is required to make a timely expert disclosure even if the party is still working out the details of retaining or employing the witness. Here, the disclosure indicates the proposed witness requires a per-hour fee for testifying. (Ex. B., p 2.). The defendant should have disclosed his intent to hire Williams, even if the funding details had not yet been finalized. Finalizing funding arrangements is not a reason to surprise the government with an eve-of-trial disclosure.

[3] "Obviously, the information that we expect the expert to offer is largely dependent upon the testimony that is brought forth during the trial, and our review of discovery that has recently been tendered. We expect that we will have to supplement this disclosure after hearing the testimony, sufficiently in advance of any expected testimony." (Ex. A).

7

approach defeats the purpose of Rule 16, pre-trial discovery, and pre-trial deadlines. As described above, Rule 16 contemplates expert disclosure in *advance* of trial; not on a rolling basis during trial. Without a complete statement of opinions to be provided by the expert, the expert disclosure is insufficient and the proffered expert should be precluded from testimony.

### No Bases for Proposed Testimony

Third, most crucially, the disclosure fails to provide the "bases and reasons" for *any* opinion about O-Block, Dipset, or Roberson's membership in or association with either. Williams' resume cites academic study and trial testimony about generic gang activity, but nothing in his resume or disclosure provides any basis for expertise regarding O-Block or Dipset specifically. Having a general understanding of the structure and geography of the Gangster Disciples (GDs) and Black Disciples (BDs) – both of which have a presence in cities across the country is very different than knowing the individual membership of a particular, localized gang set within the BDs.

Further, the disclosure does not explain how Williams could have formed an opinion about Roberson's membership in or association with either O-Block or Dipset. Has Williams met Roberson? Interviewed O-Block members? Reviewed an O-Block membership list? The disclosure does not say. Roberson's efforts to elicit this "opinion" that he is not a member of the charged enterprise – without any explanation of Williams' basis for the opinion – asks the jury to substitute the expert's opinion for the jury's conclusions on the ultimate issue of whether Roberson participated in the

charged offenses in order to "increase or maintain" status in the charged enterprise. Without providing the basis for the expert's opinion, the disclosure fails to comport with Rule 16 and the expert should be excluded.

**II.     Williams' Testimony is Also Inadmissible Under Federal Rules of Evidence 702 and 403.**

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) "govern the admission of expert testimony in federal courts." *C.W. ex rel. Wood v. Textron*, 807 F.3d 827, 834 (7th Cir. 2015). Rule 702 allows the admission of testimony by an "expert," someone with the appropriate "knowledge, skill, experience, training, or education" to help the trier of fact "understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Experts are only permitted to testify, however, when their testimony is (1) "*based upon sufficient facts or data*, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* (emphasis added). "Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable." *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015). Expert testimony helps the trier of fact if it is relevant, it is not within the jury's common knowledge and experience, and the testimony will not usurp the jury's role of evaluating a witness's credibility. *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006); *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006).

The "admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the

9

pertinent admissibility requirements are met by a preponderance of the evidence proponent of expert testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Committee Notes, 2020 Amendments to Rule 702.

Even if testimony is admissible under Rule 702 and *Daubert*, this Court may exclude it under Federal Rule of Evidence 403. "Rule 403 permits a district court to 'exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (alteration in original) (quoting Fed. R. Evid. 403). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.*, *citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

Defendant's disclosure lacks sufficient detail for the government – or the Court – to fully analyze the disclosure under Federal Rules of Evidence 702 and 403, and the disclosure comes too late for the Court to hold a *Daubert* hearing. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.") Still, the summary of testimony provided in the disclosure – general gang topics, some information as to O-Block and Dipset, and references to cultural testimony – indicates the proposed testimony fails to meet the requirements of Rule 702 and runs afoul of Rule 403.

<u>General Gang Testimony</u>

Roberson proposes to offer expert testimony "about street gangs generally in the Northern District of Illinois" and how "the structures and operations of gangs have changed significantly in the last several decades," among other topics. (Ex. A). Such general testimony is not helpful to the jury, given the jury will hear from current or recent members of the actual gangs – O-Block and STL – that will be central to the case and whom the defendants may cross examine or seek to call in their case.

Williams' resume demonstrates historical familiarity with certain gangs, such as the P Stones, but no particularized expertise with the charged enterprise, O-Block. For example, per its table of contents, Williams' upcoming book on the Black Disciples covers a period between the 1960s and early 1970s, decades before O-Block's creation. The disclosure indicates Williams would testify on topics like gang members' and

11

followers' "hand signs and gang tattoos" and jewelry, gang members' use of social media and nicknames, and gang members' distribution of narcotics. (Ex. A, p. 2). This section of the disclosure does not identify what gangs Williams will testify about, what opinions he will provide regarding these topics, or how this testimony is probative or helpful to the jury, particularly when the jury will be presented with evidence and testimony about the specific tattoos the defendants had, the specific methods of narcotics distribution used by the charged enterprise, and the specific social media accounts belonging to the defendants.

### Opinions on O-Block and Dipset

The only opinion the disclosure contains specifically about O-Block, the charged enterprise listed, is that "O-Block" may refer to the gang, its Parkway Garden headquarters, or "a group of drill rap music makers and followers." (Ex. A. at 2.) Otherwise, the disclosure merely says Williams will testify "about" O-Block. (*Id.*) Again, the disclosure provides no basis for Williams' opinion or expertise on O-Block, and there is no reason to believe that even a properly-qualified expert's opinion would be any more helpful to the jury than witnesses who will testify to O-Block's inner workings, membership, headquarters, and music. The disclosure also provides a similarly-short summary of Williams' proposed testimony about Dipset, again without describing Williams' basis for knowledge or how the opinion would be useful to the jury. Indeed, Williams' CV does not list any prior testimony related to O-Block or Dipset. (*See generally* Ex. B.)

"Cultural Expertise"

According to the disclosure, "Williams will testify about African American males who reside in poverty-stricken urban communities and their attraction to 'gangsta rap' and 'drill rap' music." (Ex. A.) Such testimony, if offered, runs afoul of Rules 401, 403, and 702, and provides no helpful information to the jury.

The disclosure provides no basis for this topic. It also provides no information as to which "poverty-stricken urban communities" it refers, whether Roberson or others are part of these communities and how Williams knows that, or the relevance or helpfulness of this testimony. Further, "cultural expert" testimony like that proffered here, risks confusing the jury appealing to cultural stereotypes. *United States v. Bahena-Cardenas*, 411 F.3d 1067 (9th Cir. 2005) (in criminal immigration case, no abuse of discretion where district court excluded testimony of "cultural expert" to testify about Mexican citizens who lied on birth certificates after conducting a small scale study); *United States v. Rubio-Villareal,* 927 F.2d 1495, 1502 n.6 (9th Cir. 1991) (no an abuse of discretion to reject testimony that "would have shown that [defendant's] failure to register his truck is a common phenomenon in Mexico"); *United States v. Ramirez*, 383 F.Supp.2d 1179 (D. Ne. 2005) (in narcotics case, the proposed expert testimony by credentialed sociologist that it was not unusual for Hispanic immigrants to arrange for transportation across the country with persons they have just met would be, "little more than a recitation of ethnic or cultural stereotypes, it has the real potential to prejudice, mislead or confuse the jury" and "the probative value of this very general testimony is nil."); *Jinro America Inc. v.*

13

*Secure Investments, Inc.,* 266 F.3d 993, 1007 (9th Cir. 2001) ("Allowing an expert witness in a civil action to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transactions to evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fits the stereotype."). Further, such testimony invites the jury to inappropriately consider the socioeconomic status of the defendants, which is not relevant to any element of the offense and is not at issue in trial.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court exclude Defendant's proposed expert.

                              Respectfully submitted,

                              MORRIS PASQUAL
                              Acting United States Attorney

By:    /s/ *Ann Marie E. Ursini*
        JASON A. JULIEN
        ANN MARIE E. URSINI
        CAITLIN WALGAMUTH
        SEAN HENNESSY
        Assistant U.S. Attorneys
        219 South Dearborn, Room 500
        Chicago, Illinois 60604
        (312) 353-5300

## **CERTIFICATE OF SERVICE**

I, Ann Marie E. Ursini, an attorney, certify that I served a copy of the foregoing **Motion to Exclude Proposed Expert** by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

                    Respectfully submitted,

                    MORRIS PASQUAL
                    Acting United States Attorney

By:   /s/ *Ann Marie E. Ursini*
        JASON A. JULIEN
        ANN MARIE E. URSINI
        CAITLIN WALGAMUTH
        SEAN HENNESSY
        Assistant United States Attorneys
        219 S. Dearborn Street, Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300